**UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

v.

FRANCISCO ROMERO-CASPETA,

        Defendant.
_____/

CASE NO. 12-20376

HON. MARIANNE O. BATTANI

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO DISMISS THE INFORMATION AND MOTION
TO SUPPRESS THE ORDER OF EXPEDITED REMOVAL**

This matter is before the Court on Defendant Francisco Romero-Caspeta's Motion to Dismiss the Information (Doc. 28) and Motion to Suppress the March 19, 1999 Order of Expedited Removal (Doc. 29). The Court heard oral argument on the motions on October 10, 2012, and at the conclusion of the hearing, took the matter under advisement. For the reasons stated below, the Court **DENIES** Defendant's motions.

**I.    STATEMENT OF FACTS**

On March 16, 1999, Francisco Romero-Caspeta presented a United States Border Crossing Card to the Immigration and Naturalization Service ("INS") at the Hidalgo, Texas Port of Entry. (Compl. at ¶ 8, ECF No. 1). The name on the card was "Luis Carlos Trevino-Serna." (Id.) INS officials determined Romero-Caspeta was not the person named on the card, and served Romero-Caspeta with a Notice of Expedited Removal. (Id.) On March 17, 1999, Romero-Caspeta was removed from the United States. (Id. at ¶ 10).

On March 14, 2012, Immigration and Customs Enforcement ("ICE") discovered Romero-Caspeta after he appeared in 28th District Court for a traffic offense in Southgate, Michigan. (Id. at ¶ 12). ICE determined Romero-Capseta, a citizen of Mexico, did not reapply for admission to the United States. (Id. at ¶ 15). Consequently, Romero-Caspeta was charged with illegal re-entry into the United States after previous removal in violation of 8 U.S.C. § 1326.

Section 1326(a) provides in relevant part:

(a) Subject to subsection (b) of this section, any alien who-

    (1) has been denied admission, excluded, deported, or removed . . . and thereafter

    (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

The Order of Expedited Removal stated "you are prohibited from entering, attempting to enter, or being in the United States: for a period of 5 years from the date of your departure from the United States as a consequence of your having been found Inadmissible as an arriving alien." (Def.'s Mot. Dismiss Inform. Ex. A, ECF No. 28). It further provided "[a]fter your deportation or removal has been effected, if you desire to enter the United States within the period during which you are barred, you must request and obtain permission from the Attorney General to reapply for admission into the

United States." Id. This five-year rule emanates from 8 U.S.C. § 1182(a)(9)(A)(i), which provides in relevant part:

> Any alien who has been ordered removed under section 1225(b)(1) of this title or at the end of proceedings under section 1229a of this title initiated upon the alien's arrival in the United States and who again seeks admission within 5 years of the date of such removal . . . is inadmissible.

## II. STANDARD OF REVIEW

Under the Federal Rules of Criminal Procedure, an information need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). On a motion to dismiss, "[the court] test[s] the [information] solely on the basis of the allegations made on its face, and such allegations are taken to be true." United States v. Reitmeyer, 356 F.3d 1313, 1316-17 (10th Cir. 2004); see also United States v. Landham, 251 F.3d 1072, 1080 (6th Cir. 2001) ("courts evaluating motions to dismiss do not evaluate the evidence upon which the [information] is based"). An information is adequate "if it (1) includes the elements of the offense intended to be charged, (2) notifies the defendant of 'what he must be prepared to meet,' and (3) allows the defendant to invoke a former conviction or acquittal in the event of a subsequent prosecution." United States v. Cor-Bon Custom Bullet Co., 287 F.3d 576, 579 (6th Cir. 2002) (quoting Russell v. United States, 369 U.S. 749, 762-64 (1962)).

## III. ANALYSIS

Romero-Caspeta advances several arguments challenging the sufficiency of the information under Fed. R. Crim. P. 12(b). First, he argues he did not reenter the United States in violation of 8 U.S.C. § 1326 because the five-year ban requiring express consent from the Attorney General lapsed on March 17, 2004. (Def.'s Mot. Dismiss

3

Inform. at 5, ECF No. 28). After five years lapsed, he needed no express consent from the Attorney General to enter or attempt to enter the United States. (Def.'s Reply at 2, ECF No. 39). Second, Romero-Caspeta argues the statute of limitations has expired because the last day in which he was required to have the express consent of the Attorney General was on March 17, 2004. (Def.'s Mot. Dismiss Inform. at 7, ECF No. 28). Last, Romero-Caspeta moves to suppress the 1999 Order of Expedited Removal on the ground that the procedure violates due process.

### A. Motion to Dismiss the Information

#### 1. Sufficiency of the Information

Romero-Caspeta construes the offense under § 1326 as "being present [in the United States] at a time when [he] needed advance permission of the Attorney General in order to obtain a visa." (Def.'s Reply at 2, ECF No. 39). The only way to violate the statute, he claims, is to enter or attempt to enter the United States without the consent of the Attorney General during the five-year prohibition period. Consequently, once that period expires, an alien is not required to obtain such consent, and thus, cannot be convicted of entering the country without such consent, even if he may be otherwise unlawfully present. To arrive at this conclusion, Defendant assumes the five-year rule in § 1182(a)(9)(A)(i) implicitly modifies the language of § 1326, which sets forth the exception for Defendant to show he did not need the express consent of the Attorney General. Romero-Caspeta argues that express consent is needed only until five years elapses. His assumption lacks support. Section 1326 does not contain a time limit, and courts have held § 1182(a)(9)(A)(i) does not amend or modify § 1326. See United States v. Bernal-Gallegos, 726 F.2d 187 (5th Cir. 1984); United States v. Joya-Martinez,

4

947 F.2d 1141 (4th Cir. 1991). Moreover, Romero-Caspeta's argument overlooks the underlying premise of the statue: a previously removed alien found unlawfully within the United States *at any time* without the Attorney General's consent commits a § 1326 offense.

Romero-Caspeta's reliance upon United States v. Idowu, 105 F.3d 728 (D.C. Cir. 1997) to support his position is misplaced. In that case, the defendant, Idowu, was removed after he was convicted of mail fraud. Nevertheless, Idowu reentered the United States more than five years later. Id. at 729. The court allowed him to withdraw his guilty plea based on an argument not raised by previous counsel that he was not required to obtain consent from the Attorney General to reenter the United States because five years had elapsed since his removal. Id. at 731-32. The court suggested this could be a "complete defense," but did not rule on the issue. Id.

Although Idowu may have some factual similarities, it does not control the outcome of this case. First and foremost, it is not binding authority. Second, the court merely held that the "confusion about the effect of the five-year rule on § 1326(a)" created a substantial reason to allow Idowu to withdraw the plea. Id. at 733.

Two courts addressing the argument rejected the position that an alien cannot be convicted under § 1326 after the five-year prohibition period lapses. See United States v. Bernal-Gallegos, 726 F.2d 187 (5th Cir. 1984); United States v. Joya-Martinez, 947 F.2d 1141 (4th Cir. 1991). The Court agrees with the decision that § 1182(a)(9)(A)(i)[1] does not modify the language of § 1326, and that §1182 is a civil statute governing visa eligibility, while § 1326 is a criminal statute designed to deter illegal reentry.

---

[1] Previously § 1182(a)(17).

The two statutory provisions serve different purposes. Under § 1326, an alien previously removed from the United States who reenters without the express consent of the Attorney General, commits a federal offense. The statutory language does not limit the period in which consent is required to five years. Conversely, under § 1182(a)(9)(A)(i), an alien who is removed and applies for admission without the express consent of the Attorney General is deemed "inadmissible" for five years after the removal. During these five years, the alien may not even apply for legal admission, let alone enter the United States without the express consent of the Attorney General. The statutes do not reference each other.

Courts and litigants that read these statutes fail to recognize that once an alien is deported, entering the United States at any time, even after five years have elapsed, without the express consent of the Attorney General is a crime. See Eric H. Singer, United States v. Idowu: *Inadmissibility and Unlawful Reentry After Deportation – Still Confused After All These Years*, 29 Sw. U. L. Rev. 301, 302-03 (2000). Once the five-year prohibition to apply lapses, the alien *still must obtain the express consent of the Attorney General to enter the United States*. The expiration of the five-year period simply does not require the alien to obtain consent from the Attorney General to avoid being deemed "inadmissible" under § 1182(a)(9)(A)(i) in the event the alien applies for admission. The five-year ban on application is another hurdle an alien faces in attempting to reenter the United States. It does not follow that once five years elapse, there is no requirement for consent to enter the United States. It is only that, after five years, the alien need not obtain consent from the Attorney General to once again become "admissible" under the law. Section 1182(a)(9)(A)(i) provides that deported

aliens who reapply within five years of their deportation are "inadmissible," thereby making it more difficult to enter the United States. These criteria are separate from § 1326, which is an independent criminal deterrent, punishing those who are deported from illegally reentering the United States without consent.

The distinction between "admissible" and "inadmissible" is important. An alien may not enter the United States unless he can present himself as "admissible" at the time of attempted entry or benefits from a waiver. <u>See</u> 8 U.S.C. § 1182(h); Singer, <u>supra</u> at 304. Grounds of "inadmissibility" include disease, criminal convictions, national security, poverty, and prior deportation. <u>See</u> 8 U.S.C. § 1182(a)(1)-(5). This provides more support for the fact that the § 1182 five-year ban on application for reentry does not implicitly carry with it a defense to prosecution for a § 1326 violation. It is merely another hurdle to clear resulting from the alien's unlawful entry into the United States. Therefore, because five years passed since the date of his deportation, Romero-Caspeta did not need express consent to become "admissible" for reentry. He was, however, still required to obtain the express consent of the Attorney General before reentering the United States.

### 2. Statute of Limitations

Romero-Caspeta argues the Information is barred by the statute of limitations because the "last day on which [he] could have been in the United States at a time when the statute required him to have the advance permission of the United States was March 17, 2004." (Def.'s Mot. Dismiss Inform. at 7, ECF No. 28). The success of Defendant's argument depends on his assumption that express consent of the Attorney

7

General is not needed to enter the United States after the five-year application prohibition expires.

A violation of § 1326 is subject to a five-year statute of limitations. See 18 U.S.C. § 3282. The Sixth Circuit has not yet addressed when the limitations period commences for purposes of a § 1326 violation. See United States v. Mendez-Santana, 615 F. Supp. 2d 624, 627 (E.D. Mich. 2009). However, other circuits have held the period commences when the alien is found in the United States, meaning the alien is physically discovered by immigration authorities. See United States v. Gomez, 38 F.3d 1031, 1035 (8th Cir. 1994); United States v. DiSantillo, 615 F.2d 128, 137 (3d Cir. 1980). A constructive knowledge analysis has also been employed. See United States v. Herrera-Ordones, 190 F.3d 504, 510-11 (7th Cir. 1999); United States v. Bencomo-Castillo, 176 F.3d 1300, 1303 (10th Cir. 1999).

Here, Romero-Caspeta was not found in the United States until March 14, 2012, when immigration authorities arrested him. It is unknown when he reentered the United States after his 1999 deportation. The statute of limitations did not commence once the five-year application ban expired,[2] but once he was detained. Because the information was filed in June 2012, only months after Romero-Caspeta was arrested, it is timely.

---

[2] Romero-Caspeta's argument that express consent is not required for him to reenter the United States coupled with his illogical argument that the statute of limitations commences once the five-year application ban expires is a Catch-22 and provides little incentive for deported aliens to cease their attempts at illegal entry. Such a policy signifies open season for admission to the United States for those who patiently wait five years before they attempt to reenter. This theory assumes immediate reentry once the five-year ban expires. If he simply waited five extra years after the expiration of the five-year reapplication ban, he becomes immune from prosecution. The government would be forced to search for the alien, who may not even have entered yet, while the limitations clock expires. Consequently, the offense becomes time-barred before it is committed.

**B. Motion to Suppress the Order of Expedited Removal**

Additionally, Romero-Caspeta argues the 1999 Order of Expedited Removal should be suppressed from evidence because the procedures used to remove him were unconstitutional. He relies on United States v. Mendoza-Lopez, 481 U.S. 828, 837 (1987), which held that alien criminal defendants are entitled to some meaningful review of the deportation or removal procedure used as a predicate to a § 1326 offense. At least one circuit held that Mendoza-Lopez afforded a defendant "some meaningful review" of the expedited removal procedure used in the present case. See United States v. Barajas-Alvarado, 655 F.3d 1077, 1091 (9th Cir. 2011).

In response to Mendoza-Lopez, Congress amended § 1326 to include subsection (d), which allowed limited collateral challenges to removal orders. Barajas-Alvarado, 655 F.3d at 1083 n.6. Title 8 U.S.C. § 1326(d) precludes collateral review of the prior deportation order unless Romero-Caspeta can show that he exhausted his administrative remedies, the deportation proceedings improperly denied him of any judicial review, and the deportation order was fundamentally unfair. United States v. Zuniga-Guerrero, 460 F.3d 733, 735 (6th Cir. 2006). "Fundamentally unfair" means "that the procedural error he identified deprived him of due process, and he suffered prejudice as a result." Barajas-Alvarado, 655 F.3d at 1088.

In order to exhaust administrative remedies, Romero-Caspeta must have appealed the order to the Board of Immigration Appeals ("BIA"). Sswajje v. Ashcroft, 350 F.3d 528, 532 (6th Cir. 2003). Defendant provided no evidence that he appealed the order or was unable to do so. Thus, the first prong is unsatisfied.

Defendant was also not improperly deprived of the right to judicial review. Although 8 U.S.C. § 1252 precludes judicial review of § 1225(b) expedited removals, it does provide judicial review for petitions involving constitutional questions. 8 U.S.C. § 1252(a)(2)(D) ("Nothing . . . in any other provision of this chapter . . . which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims"). Romero-Caspeta had the opportunity to seek judicial review of the 1999 Order of Expedited Removal, but failed to exercise it.

Romero-Caspeta argues the order is fundamentally unfair because he should have been offered "the opportunity to withdraw his application for admission and return back to Mexico without an order issued against him." (Def.'s Mot. Suppress at 6, ECF No. 29). He also argues that the immigration officers did not have reasonable suspicion to arrest him and seize his border card. According to the Complaint used as the basis of the Information, Romero-Caspeta was twice permitted to return to Mexico without an order issued against him. "On March 13, 1999, the Defendant was encountered by the United States Border Patrol at or near Hidalgo, Texas and *granted a voluntary return* back to Mexico." (Compl. at ¶ 4, ECF No. 1). The same instance occurred on March 15, and Romero-Caspeta was again permitted to return to Mexico without any order against him. (Id. at ¶ 7). Romero-Caspeta's argument that he should have been granted a third voluntary return after presenting a fraudulent identification card is meritless. Not only is such relief within the discretion of immigration officials, it is unlikely that such relief would be granted a third time involving a false identification. See Barajas-Alvarado, 655 F.3d at 1090-91. Furthermore, the assertion that this is

insufficient to constitute reasonable suspicion in the mind of immigration officials to arrest and seize Romero-Caspeta's border crossing card is also without merit.

In sum, the Court finds none of the three elements required to permit a collateral attack against the 1999 Order of Expedited Removal are satisfied.

**IV. CONCLUSION**

For the reasons stated above, the Court **DENIES** Defendant's Motion to Dismiss the Information and Motion to Suppress the Order of Expedited Removal.

**IT IS SO ORDERED**.

                                          s/Marianne O. Battani
                                          MARIANNE O. BATTANI
                                          UNITED STATES DISTRICT JUDGE

DATE: October 15, 2012

---

**Certificate of Service**

The undersigned certifies that a copy of the foregoing Opinion and Order Denying Defendant's Motion to Dismiss the Information and Motion to Suppress the Order of Expedited Removal was served on the attorneys of record herein by electronic means or U.S. Mail on **October 15, 2012**.

                              s/Kim Grimes
                              Acting in the absence of
                              Bernadette Thebolt, Case Manager